## Louisville & Nashville R. R. Co. v. Hardy.

(Decided February 28, 1911.)

### Appeal from Bourbon Circuit Court.

1. Where a railroad conductor turns the switch himself, and negligently has a car backed on the wrong track, the company is none the less liable because he turned the switch himself instead of directing one of his men to turn it.

2. A judgment will not be reversed for a blank accidentally left in one instruction, after the dollar mark, when neither of the parties asked the court to fill the blank, and on the whole case the defendant was not prejudiced by the omission.

EMMITT M. DICKSON and BENJAMIN D. WARFIELD for appellant.

ROBERT B. FRANKLIN, CHAS. A. McMILLAN and ROBERT C. TALBOTT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

James J. Hardy, a brakeman in the service of the Louisville & Nashville Railroad Company, was thrown from a freight car and injured at Ford, Kentucky, on April 6, 1909. He brought this suit to recover for his injuries, and recovered in the circuit court $4,000. The railroad company appeals.

The facts of the case as shown by the proof for the plaintiff are these: The train on which Hardy was employed took a side track at Ford to allow another train to pass. They had in the train a car which was to be put off. There was at Ford a side track leading down to a mill on quite a steep grade, and by a rule of the company cars were not to be turned loose on this track, but should be taken down by an engine on account of the danger of their being unmanageable from the steepness of the grade. After the other train had passed, Hardy's train was pulled out on the main track with the view of cut-

ting off the car that was to be left at Ford. The switch which led into the steep track referred to was then closed. The engineer pulled up with the car in question. attached to the engine, Hardy being on that car. After he got in motion, the engine was checked so as to allow that car to be cut loose from the engine. The engine was then speeded past the switch before the car reached it, the switch was then turned by a brakeman so as to throw the car in on a side track. But while they were doing this the conductor had opened the switch leading into the steep track which was about 100 feet further on; and so the car with Hardy on it went in on this track. By reason of the steepness of the grade Hardy was unable to control the car. Finding that he could not control it he tried to go down the ladder and jump off, but just as he got to the ladder, the car which was going quite rapidly, gave a lurch, and threw him off, breaking both bones of one leg below the knee, injuring his hip and injuring his shoulder.

According to the proof for the defendant, the conductor did not turn the switch leading into the steep track, and was not to blame for the car being sent in on this track without an engine being attached to it. But in view of all the evidence and the circumstances, we can not say that the conclusion of the jury was unwarranted.

It is earnestly insisted on the appeal that if the conductor turned the switch himself, he was in so doing discharging the duty of a brakeman, and was, therefore, simply a fellow servant of Hardy. But he was the managing agent of the defendant in charge of the train. He was directing the movement of the train, and if he sent the car down on this steep switch, it was the act of the defendant. In I. C. R. R. Co. v. Coleman, 22 R., 878, where the same question was made, we said:

"The rule is well settled in this State that the master is responsible for the negligence of his superior servant to one under his control for an injury thereby caused him, and we are unable to see that it can make any difference whether the negligent act was done by his own hand or by another under his orders. The reason of the rule is that the superior servant represents the master, and it seems to us to apply with as much force in one case as the other."

Again in Diebold v. Wollborn, 122 S. W., 212, we said:

"When a foreman for the time being takes a place made vacant by the absence of a laborer who was under him, he does not surrender the duties and obligations of a superior; but the master will be responsible for his negligence if it results in injury to an employe who was also subordinate to the foreman. When Robinson, the foreman, undertook to perform the duties of the absent engineer, he was as much the representative of the master, and the superior of Woollborn, as when the regular engineer was present, and he was the superior of both. If the regular engineer had been present, and had been directed by Robinson not to stop the engine after the stone was swung over the wall, and this instruction had resulted in injury to Wollborn, there could be no doubt that it would have been actionable negligence, in view of the testimony of Robinson that the engine would not be started until a signal to do so was given. This being so, the fact that Robinson in temporary charge of the engine was guilty of a like act of negligence rendered the master liable."

To same effect see Board v. C. & O. R. R. Co., 24 R., 1079, I. C. R. R. Co. v. Elliott, 26 R., 669. A contrary rule was not laid down in Sinclair v. I. C. R. R. Co., 140 Ky., 152. In that case the section boss, Prewitt, was helping his men to get out a tie, each of them having a pick with which he was pulling at the tie. The section boss' pick slipped and struck Sinclair. It was held that there was no evidence of negligence on the part of the section boss in handling the pick, and that it was not a matter of importance that it was the pick of the foreman, Prewitt, that slipped. The court said:

"It may be treated as if the foreman was doing what he would have directed one of the other men to do, or, in other words, as if Sinclair had been hurt by one of the employes, who in connection with Sinclair and the others were pulling out the tie in the manner directed by Prewitt. If the appellee company would not be liable in a state of case like this, clearly they could not be liable merely because Prewitt happened at the time to be doing the work of one of the employes."

In the case at bar if the conductor had ordered one of the brakemen to turn this switch and the car had thus been run on it, the company would clearly be liable for his

negligence; and we see no sound reason why it should not be liable when he turned it with his own hand, instead of directing one of his men to turn it. In either case under the circumstances it was an order by him for the car to be run down on a steep track without an engine being attached to it, thus endangering Hardy who was on the car without means of self protection. If the conductor had done with his own hands something, for which the company would not be liable if it had been done under his orders by one of his men, the Sinclair case would be in point.

In instructing the jury as to the measure of damages, the court among other things said this:

"If the jury find for the plaintiff, they ought to fix his damages at such a sum as will fairly and reasonably compensate him for the physical pain and mental anguish that he has already endured, if any; for loss of his time, if any, not to exceed $.......; for the medical services for which plaintiff became indebted, if any, not to exceed $150.00, for the diminution or impairment, if any, of his power to earn money, not to exceed, however, in all the sum of Ten Thousand Dollars, the amount claimed in the petition."

It is insisted that the judgment should be reversed because the blank was not filled in this instruction after the dollar mark. No doubt the blank was left by oversight, neither party calling the court's attention to it. In cases of this sort the maximum amount to be allowed for loss of time should always be stated in the instruction, but whether a new trial should be granted for an omission to fill the blank is a different question. By Section 134 of the Code, the court must in every stage of an action disregard any error or defect which does not affect the substantial rights of the adverse party, and no judgment shall be reversed or affected by reason of such error or defect. We have carefully considered the evidence and are satisfied upon the whole case that if this blank had been filled it would in no wise have affected the result. The plaintiff sustained serious injuries which were very painful. There was testimony for him at the trial which occurred about a year after he was hurt that his injuries were permanent; while there was proof for the defendant that it was probable that in time his leg would be strong again. He had not been able to do any work to amount to anything since he was hurt,.

and what the future would do for him was by no means clear under the evidence. The jury evidently took the view that he would never be able to follow his calling any more, and on this ground based their verdict for $4,000. The instructions given by the court were practically taken from those asked by the parties, and while some verbal criticisms are made, we do not see any substantial error in them. On the whole case we think that the defendant had a fair trial on the merits and that no error was committed to the prejudice of its substantial rights.

Judgment affirmed.